A. T. FREDRICKS, APPELLANT, v. THE CITY OF LAS VEGAS, A MUNICIPAL CORPORATION, RESPONDENT.

No. 4282

November 9, 1960                    356 P.2d 639

419

*Calvin C. Magleby,* of Las Vegas, for Appellant.

*Calvin M. Cory and Sidney R. Whitmore,* of Las Vegas for Respondent.

## OPINION

By the Court, BADT, J.:

Fredricks sued the city of Las Vegas for a declaratory judgment to determine the rights of the respective parties under a contract providing the terms and conditions under which Fredricks could occupy and use certain lots in the city. The lots were at the time held by the city under a 20-year lease whose terms are not in issue. The contract in question assigned to Fredricks all the city's right, title, and interest in the property and in the lease; and Fredricks in turn assumed the city's obligation to pay the $500 monthly rental therein reserved.[1] He further covenanted (and the meaning of such covenant was the issue before the trial court) that he would:

"4. Let a contract for the erection of a multiple-level parking structure on the above described real property:

(a) within a period of 18 months from the date hereof; or

(b) at such time as an average turnover of seven automobiles per space day shall have been experienced for a period of 30 consecutive days; or

(c) at such time as a contract for [such] construction" could be entered into with an alternate party after giving appellant prior refusal.

Appellant concedes that if within the period of 18 months the city found an alternate assignee to construct

---

[1]The contract was between the city and General Parking, Inc., a Nevada corporation of which Fredricks was the president. The corporation assigned it to Fredricks. Such assignment presents no issue in this case.

the multi-level parking structure, after prior refusal by Fredricks to construct same, Fredricks' rights under the contract would terminate. In other words, appellant concedes that the third alternative preceded by the word "or" is an accelerating provision. He insists, however, that clauses (a) and (b) are not alternatives; that the word "or" between these clauses should be read in its conjunctive rather than its disjunctive sense; that he would have to fail in his performance under both clause (a) and clause (b) before the city would have the right under the terms of the contract to terminate his possession; that clause (a) gave him a minimum term of possession of 18 months; that it was only after termination of the 18 months' period under clause (a) that the provisions of clause (b) would apply; that the true meaning of clause (b) can be found only by inserting the word "later" so as to make the clause read "(b) at such *later* time," etc.

The trial court found "that said Paragraph IV is not ambiguous and is in the alternative and that the plaintiff did not comply with the said Paragraph IV." Appellant's contention that such finding is error is without merit. Conceding that the word "or" may be used, interpreted, or construed in a conjunctive rather than a disjunctive sense to prevent an absurd or unreasonable result, or where the context requires such construction, or such construction is necessitated by some impelling reason in the context, there is no reason here for interpreting it other than in its ordinary and elementary sense and giving it its disjunctive meaning.

Despite the fact that plaintiff's complaint claimed only that he had complied with the conditions of *his contract* and that after his 18 months' term his tenure could not be terminated unless in addition there was a default in building a multi-level parking structure after a 30-day demonstration of a seven-car turnover per space day, he sought to prove at the trial that the word "later" was inadvertently omitted from paragraph (b) (so as to read "at such *later* time"), that there was a mutual mistake in omitting it, that the omission was the

result of clerical error, that the clause as written did not express the intention of the parties, and that the city manager had represented that the city would never contend that, under the lease as drawn, Fredricks' occupancy would terminate at the end of 18 months if he had not let a contract for the construction of the multi-level parking structure within that time. The complaint did not allege mutual mistake, did not allege clerical error, did not allege that the executed contract failed to express the intention of the parties, did not allege fraudulent representations or other matters in estoppel, and did not seek a reformation of the contract.

A great deal of evidence was introduced by plaintiff, over objection, concerning the negotiations that led up to the execution of the final contract, and in explanation of why the plaintiff signed the contract in its final form despite the fact that it did not contain a provision upon which he had insisted. The learned trial judge expressed considerable doubt that the testimony or the preliminary unexecuted drafts of the contract were admissible but decided to admit them for his consideration. While on several of these occasions he obtained from both parties their approval of the court's conclusion as to the issue presented for its determination, namely, its interpretation of the meaning of the contract in the final form as executed by the parties, plaintiff, over objection, introduced evidence in support of his additional contentions above noted.

Since the executed written contract was clear and unambiguous on its face, there was no room for the introduction of extraneous evidence to explain its meaning. Woods v. Bromley, 69 Nev. 96, 241 P.2d 1103; Reno Club, Inc. v. Young Investment Co., 64 Nev. 312, 182 P.2d 1011, 173 A.L.R. 1145; Talbot v. Nevada Fire Insurance Co., 52 Nev. 145, 283 P. 404, 286 P. 1118. This being so, it is unnecessary for us to discuss the evidence supporting appellant's contentions concerning the intention of the parties. However, assuming that the contentions of appellant as hereinabove noted had been

properly pleaded, or had been tried with the consent of the parties, thus making such issues proper for the consideration of the trial court and for the consideration of this court on appeal (Poe v. La Metropolitana Compania Nacional, S.A., 76 Nev. 306, 353 P.2d 454; United Tungsten Corporation v. Corporation Service, Inc., 76 Nev. 329, 353 P.2d 452), there was substantial evidence to support the court's finding "that the preliminary negotiations [which included submission and discussion of sundry preliminary drafts of the proposed contract] and/or conversations between the plaintiff and certain employees of the city [on which Fredricks relies to establish an estoppel] were not made a part of the  *  *  *  agreement between the parties, and that said negotiations or conversations were never intended [by either party] to be made a part of said agreement."

We feel that the foregoing finding, reinforced by the language used in the court's written opinion to the effect that the telephone conversation between Fredricks and the city manager did not alter or change the contract, and as reinforced by the judgment entered, furnishes a necessarily implied finding negativing the contention that the city was estopped from enforcing the contract as executed. Krick v. Krick, 76 Nev. 52, 348 P.2d 752.

Appeal dismissed.

McNAMEE, C. J., and PIKE, J., concur.