DONALD R. SCHIEVE, Appellant, *v.* F. EVERETT WARREN, Respondent.

No. 6208

February 9, 1971                              482 P.2d 303

---

. . . .

*Bissett & Logar,* of Reno, for Appellant.

*Sanford, Sanford & Fahrenkopf* and *Mills Lane,* of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

This appeal is from a judgment for $19,080 plus interest

and costs in favor of Warren, the seller, and against Schieve, the buyer, for breach of a written agreement for the sale of a clinical laboratory business. The original agreement was twice modified in writing. District Court error is claimed in allowing parol evidence to alter the agreement as modified. Such evidence was received upon the theory that the second modification of the original agreement, upon which this dispute mainly rests, was never intended to create legal relations between the parties, was made for an ulterior purpose, and was, in fact, a sham. After hearing and evaluating the parol evidence the court concluded that the second modification to the original agreement was a sham agreement, and released the seller from his obligations thereunder, but bound the buyer to perform its terms. Judgment was entered accordingly.

Warren owned a going business which he operated under the assumed name of Western Clinical Laboratories. Schieve, a doctor specializing in pathology, wished to buy it. In 1964 they entered into a written agreement of sale for the price of $25,000 payable as set forth therein. In addition Warren was given a five-year employment contract with an option to renew for another five years at a lucrative salary and other benefits. The parties performed thereunder until February 15, 1966, when they consummated two modification agreements. The first changed the manner in which the purchase price of $25,000 was to be paid. The second terminated the employment provisions and provided instead that Warren would perform consultation services for a period of five years for which he would be paid $31,822.87 at monthly intervals in accordance with an amortization schedule prepared by Warren's accountant. Should Schieve terminate the consultation agreement without cause he was obliged to pay Warren, as liquidated damages, $31,822.87 less consultation payments made prior to termination.

Schieve made all payments on the $25,000 obligation and was not in default at the time of trial. Moreover, he made all payments pursuant to the amortization schedule for consulting services until March 1, 1968, when Warren was notified that he had breached his duty to perform consulting work and that no further payments would be made therefor. Warren commenced this law suit three months later.

The parol evidence received by the court over objection was that despite the written documents to the contrary, the parties agreed that the purchase price was $60,000 and that Warren was not obliged to render the consulting services specified.

The agreements were prepared as they were for tax and other purposes. The court accepted that evidence and based its findings and judgment thereon. This, we think, was error. The inevitable consequence of the court's ruling was to alter the plain wording of the written documents in contravention of established law [Young Electric Sign v. Lynch, 77 Nev. 416, 365 P.2d 648 (1961); Tallman v. First Nat. Bank, 66 Nev. 248, 256, 208 P.2d 302 (1949)] and to show that the buyer had agreed to pay a greater sum than that expressed in the writings. This is not permissible. Sims v. Grubb, 75 Nev. 173, 176, 336 P.2d 759 (1959).

It is not contended that the written documents were unclear or ambiguous,[1] incomplete,[2] or the result of fraud.[3] The agreements were carefully drawn by competent counsel. The parol evidence was received solely to establish that the second modification, the consultation agreement, was a sham in that the parties never intended for Warren to perform consulting services, and that the consideration to be paid therefor, $31,-822.87, was a portion of the purchase price. This purpose, however, does not fit the concept of a sham contract since the objective was to bind one party, Schieve, but release the other. Parol evidence is admissible to show that, although the parties have executed a written contract, they did not, at the time of its execution, intend it to be a contract, and that it was not, therefore, a contract, and placed neither party under any legal obligation. Nice Ball Bearing Co. v. Bearing Jobbers, 205 F.2d 841 (7 Cir. 1953); cf. Child v. Miller, 74 Nev. 223, 327 P.2d 342 (1958); Western Nat. Ins. Co. v. Trent, 69 Nev. 239, 247 P.2d 208 (1952).[4] When a written contract is shown to be a sham, neither party is under obligation to the other.

In the case at hand the parties performed under the original agreement as modified from 1964 until differences between them arose in 1968. There is simply no room for Warren's contention that the written documents were not intended to be operative and were ineffective to create reciprocal obligations. The differences between the parties were brought to a head in March 1968 when counsel for Schieve notified Warren that he had breached the consultation agreement and that no further

---

[1]Fredricks v. City of Las Vegas, 76 Nev. 418, 356 P.2d 639 (1960); Woods v. Bromley, 69 Nev. 96, 241 P.2d 1103, (1952); Club v. Investment Co., 64 Nev. 312, 182 P.2d 1011 (1947).

[2]Gravelle v. Burchett, 73 Nev. 333, 319 P.2d 140 (1957).

[3]Chiquita M. Co. v. F. M. & Co., 60 Nev. 142, 104 P.2d 191 (1940).

[4]Annot., 71 A.L.R.2d 382 re writing as a sham agreement.

payments for consulting services would be made. Warren denied that he had failed to perform as promised. Their agreement provided that should Schieve terminate the consultation agreement without cause he was obliged to pay Warren, as liquidated damages, $31,822.87 less consultation payments made prior to termination. The result of the dispute between them inevitably must turn upon this provision of the consultation agreement, that is, whether Schieve did, or did not have cause to terminate the same.

Reversed and remanded for further proceedings in accordance with this opinion.

ZENOFF, C. J., BATJER and MOWBRAY, JJ., and MANN, D. J., concur.